UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LISA K. WILLIAMS, Administratrix of the Estate of Keith G. Burns, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 5: 18-171-DCR ) |
| V. | ) ) |
| CITY OF GEORGETOWN, KENTUCKY, et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises out of a series of events tragically resulting in Keith Burns being struck and killed by a vehicle just before midnight on October 2, 2017. [Record No. 11 ¶ 19] Plaintiff Lisa Williams, the administratrix of Burns's estate, contends that the defendants violated Burns's rights guaranteed under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. [Record No. 11 ¶ 2] Williams also alleges several state law claims for relief. The defendants have moved to dismiss the plaintiff's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Record Nos. 23, 34]. Additionally, Williams has filed a motion for leave to file a second amended complaint [Record No. 32]. For the reasons that follow, the defendants' motions to dismiss will be granted and the Williams's motion for leave to file a second amended complaint will be denied.

## I. BACKGROUND [1]

The Georgetown Police Department and Scott County Sherriff's Office received a report of a reckless driver in a dark colored pickup truck at approximately 7:45 p.m. on October 2, 2017. [Record No. 11 ¶ 9] The report indicated that the truck's lights were not illuminated and that the driver of the truck was weaving, driving on the wrong side of the road, slamming on his brakes, and had almost hit several other cars. [*Id.*] Georgetown Police Officer Tommy Enricco responded and pulled over a truck driven by Burns. [*Id.* at ¶ 10] Georgetown Police Officer Jon Noel and Scott County Sherriff's Deputy Jeremy Nettles subsequently joined Enricco. [*Id.*]

Burns did not make eye contact with Enricco and was unable to locate his driver's license or proof of insurance during the stop. [*Id.* at ¶ 11] Burns stated that he lived in London, Kentucky, but could not explain what he was doing in Georgetown, Kentucky. [*Id.*] Additionally, Enricco observed a scab on Burns's head and questioned him about it. [*Id.*] Burns responded that it was from an earlier fall and he had recently been hospitalized for a neurological disorder. [*Id.*] Burns further informed Enricco that he took medication for his blood pressure and a blood thinner, but he denied taking any medications that could affect his driving. [*Id.*]

Noel and Nettles also spoke with Burns. [*Id.*] Burns told Noel that he was taking medication for diabetes, but that he had missed two doses of his medication that day. [*Id.*] Enricco, Noel, and Nettles summoned the Georgetown Scott County Emergency Medical

---

[1] The Court relies on the facts set out in the first amended complaint because the defendant's motion is filed pursuant to Rule 12(b)(6). See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Service ("EMS") to examine Burns but Burns refused any treatment or transport to a medical facility. [*Id*. at ¶ 12]

Burns's brother-in-law Les Williams received a call from Noel who advised Mr. Williams of the situation, specifically that Burns was pulled over, his truck was impounded due to improper tags, and he was in police custody. [*Id*. at ¶ 15] Noel then told Mr. Williams that he needed to pick up Burns in Georgetown. [*Id*.] Mr. Williams informed Noel that Burns had recently been hospitalized for a stroke and it would take about an hour for him to get to Georgetown after his wife, Lisa Williams, got home from church. [*Id*.] Noel advised Mr. Williams that he should call Georgetown Police dispatch for further instructions when he got to Georgetown. [*Id*.]

Mr. Williams arrived in Georgetown around 11:00 p.m. on October 2, 2017, and called Georgetown Police dispatch who informed him that Burns had been dropped off at a McDonald's restaurant at 171 Southgate Drive in Georgetown. [*Id*. at ¶¶ 16, 17, 20] However, Mr. Williams could not find Burns when he arrived at the restaurant. [*Id*. at ¶ 17] Sadly, just before midnight, Burns was struck and killed by a van while he was walking in the roadway about two miles south of the restaurant. [*Id*. at ¶ 19]

## II. PROCEDURAL HISTORY

Lisa Williams filed suit on March 8, 2018, naming as defendants: the City of Georgetown, Kentucky; Michael D, Bosse; Nicholas Lodal; Gary Crump; and Jane/John Does Nos. 1 and 2. [Record No. 1] She subsequently sought leave to amended the complaint to dismiss the claims against Lodal and Crump and to add Georgetown Police Officers Noel and Enricco, as well as Scott County Deputy Sherriff Nettles, Scott County Deputy Tony Hampton, and Scott County, Kentucky, as defendants. [Record No. 9] The Court granted the request

and the plaintiff filed her amended complaint on April 6, 2018. [Record Nos. 10, 11] The plaintiff asserts that the defendants violated Burns's rights guaranteed under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983. She also alleges several state law claims, including negligence, gross negligence, and wrongful death. Bosse, Noel, Enricco, Hampton, and Nettles are sued in their individual capacities. [Record No. 9]

Defendants Scott County, Hampton and Nettles (collectively, the "Scott County Defendants") moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on June 27, 2018. [Record No. 23] The plaintiff filed her response on July 16, 2018, and the Scott County Defendants filed their reply on July 27, 2018. The plaintiff moved for leave to file a second amended complaint on August 13, 2018, to remove the statement that the defendants "nonetheless decided that Mr. Burns was not a danger to himself or to others." [Record No. 32 ¶ 1] Defendants City of Georgetown, Bossee, Noel and Enricco (collectively, the "Georgetown Defendants") also moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on August 13, 2018. [Record No. 34] All motions have been fully briefed.

### III. STANDARD OF REVIEW

**A. Motions to Dismiss**

A 12(b)(6) motion to dismiss requires the Court to determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement of relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted). Plaintiffs are not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, but they must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### B. Motion for Leave to File Second Amended Complaint

After a response to a complaint has been filed or a plaintiff has previously filed an amended complaint, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a); *see also Thiokal Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993). While Rule 15(a) states that the "court should freely give leave when justice so requires," denying leave is appropriate in instances of "undue delay, bad faith or dilatory motive on party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. DISCUSSION

### A. Motions to Dismiss

#### 1. The Officers' Liability

Enricco, Noel, and Nettles (collectively, "the officers") contend that they are shielded from the plaintiff's federal claims based on the doctrine of qualified immunity [2].

> Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), so we review an assertion of qualified immunity to determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'

*Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. "Because qualified immunity is

---

[2] There is a circuit split regarding whether it is appropriate for a district court to grant a 12(b)(6) motion to dismiss based on qualified immunity. *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015); *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015); *Peatross v. City of Memphis*, 818 F.3d 233, 239-40 (6th Cir. 2016). However, the Supreme Court has applied the doctrine of qualified immunity to a defendant's motion to dismiss. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Therefore, this Court will follow suit. Additionally, even if dismissal is not appropriate on the grounds of qualified immunity, the plaintiff fails to state facts that allow the court to draw a reasonable inference that the defendants are liable.

- 6 -

'an immunity from suit rather than a mere defense to liability… it is effectively lost if a case is erroneously permitted to go to trial.'" *Id*. "Accordingly, the Supreme Court has 'repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Peatross*, 818 F.3d at 240.

Viewing the facts in the light most favorable to the plaintiff, qualified immunity turns on two questions: (1) whether a constitutional right has been violated; and (2) whether the right was clearly established. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006); *Peatross*, 818 F.3d at 240; *Pearson*, 555 U.S. at 231. "A right is 'clearly established' for qualified immunity purposes when the contours of the right are sufficiently clear, even if the specific action in question has never been held unlawful." *Smoak*, 460 F.3d at 778. "The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (internal citations and quotations omitted). The plaintiff "bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation." *Peatross*, 818 F.3d at 240 (citing *Essex v. Cty. Of Livingston*, 518 F. App'x. 351, 357 (6th Cir. 2013)); *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) ("[a]t the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendants conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have known that his conduct violated that right."). The Court may consider these questions in any order, but if the answer to either question is no, dismissal is appropriate. *Johnson*, 790 F.3d at 653.

Even if it is not appropriate to grant a motion to dismiss based on qualified immunity, dismissal is still appropriate if the plaintiff fails to state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). Thus, dismissal is proper if the plaintiff fails to assert a plausible claim that a constitutional right has been violated for the qualified immunity analysis.

### a. Alleged Constitutional Violations

The plaintiff contends that the officers violated the Fourth, Fifth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983. The Court will assume Burns was in custody from the time he was pulled over until he was dropped off at the McDonald's restaurant for purposes of the constitutional analysis. However, Burns was not in custody after the officers dropped him off at the restuarant because he was free to leave at any time, as evidenced by the assertion that he was found two miles away. *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005); *see also U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980) (discussing seizure within the meaning of the Fourth Amendment). In *Biros*, an individual was not in custody requiring *Miranda* warnings when he was questioned at a police station but he was free to leave. 422 F.3d at 389.

### i. Fourth Amendment

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" U.S. Const. amend. IV. The plaintiff asserts in the amended complaint that Burns's truck was improperly tagged and impounded, he was in police custody, and he was dropped off at a McDonald's restaurant. [Record Nos. 15, 20] The plaintiff concedes in her response to the Georgetown Defendants' motion to dismiss that "[t]here was probable cause for the traffic stop and to impound Mr. Burns' vehicle." [Record No. 31 p. 5]

*Mendenhall* establishes that "a person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. at 554. The plaintiff does

not assert any facts in the amended complaint that indicate Burns was not free to leave the McDonald's restaurant.

Additionally, when the duration of a traffic stop is entirely justified by the traffic offense and the ordinary inquiries incident to such a stop, there is no Fourth Amendment Violation. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005); *Rodriguez v. U.S.*, 135 S. Ct. 1609, 1619 (2015) (Justice Thomas, dissenting). The plaintiff does not allege the duration of the stop was unconstitutional and has not presented any facts indicating that the time between when Burns was pulled over until he was dropped off at the restaurant exceeded what was justified. Because: (a) the plaintiff has not asserted any facts that Burns was in custody at the restaurant; (b) she did not put forth any facts indicating Burns was not properly in custody during the traffic stop; and (c) she concedes that the officers had probable cause to impound Burns's truck, it is not plausible to contend that the officers violated the Fourth Amendment.

### ii. Fourteenth Amendment

The plaintiff alleges that the officers violated the Fourteenth Amendment because they were deliberately indifferent to Burns's serious medical needs and put him in a more vulnerable position than he would have been in otherwise. [Record No. 11] "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). The Sixth Circuit has "found a deprivation under the due process clause [of the Fourteenth Amendment] in situations where the victim was in police custody and the police failed to act or when the police affirmatively acted to put the victim in a more vulnerable

position that he would have been in otherwise." *Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 278 (6th Cir. 2000).

"In the context of medical care involving prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). A plaintiff must prove an objective and subjective component to establish a constitutional claim for denial of medical care. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). The objective component requires the plaintiff to demonstrate that there was a sufficiently serious medical need. *Phillips*, 534 F.3d at 539 (internal citations and quotations omitted). The subjective component requires the plaintiff to show that the officers had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (internal citations and quotations omitted).[3] Stated differently, "the subjective component requires a plaintiff to allege facts which, if true, would establish that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he disregarded

---

[3] The plaintiff asserts deliberate indifference is not the proper standard to be applied here because, "when it comes to the medical needs of pretrial detainees, the applicability of a deliberate indifference standard, with the concomitant requirement that a jury somehow determine a defendant's state of mind during the events is in serious question." [Record No. 26 p. 5] To support this proposition, the plaintiff references dicta in a footnote referencing an opinion holding a Fourteenth Amendment excessive force case only needs to meet the objective component. *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). However, *Kingsley* uses only the objective component with excessive force claims, and *Richmond* does not apply *Kingsley* to deliberate indifference of a detainee's serious medical needs. Instead, the *Richmond* footnote explicitly states that "[w]e find no circuit applying *Kingsley* specifically to a deliberate indifference to a detainee's serious medical needs claim." *Id*. Therefore, the Court will continue to apply both the subjective and objective components in the present case.

that risk." *Phillips*, 534 F.3d at 540. The duty to promptly seek medical help is fulfilled by calling paramedics. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1097-98 (6th Cir. 1992).

Assuming Burns had a sufficiently serious medical need, the plaintiff failed to establish a plausible constitutional claim under the Fourteenth Amendment for deliberate indifference in the denial of medical care. Simply put, Burns was not denied medical care. In fact, the plaintiff states in her amended complaint that the officers "summoned the Georgetown Scott County Emergency Medical Service ("EMS"). However, Mr. Burns refused any treatment or transport to a medical facility." [Record No. 11 ¶ 12] Therefore, assuming the officers subjectively perceived facts to infer substantial risk to Burns and they in fact drew that inference, the officers did not disregard the risk because they provided medical care in the form of EMS.[4]

An officer may also violate the Fourteenth Amendment if he or she puts an individual who is in police custody in a more vulnerable position than the person would have been otherwise. *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997). Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, there are two exceptions to this rule: (1) the custody exception, which applies when the state restricts the "individual's freedom to act on his own behalf" and the victim was in police custody at the time of the injury, and (2) the "state-created danger"

---

[4] The plaintiff argues that the subjective element deals with the defendants' states of mind which is an issue for the trier of fact and should not be resolved on a motion to dismiss. [Record No. 31 at 7] However, the Court does not address the defendants' states of mind regarding whether the officers perceived facts to infer a substantial risk to Burns and in fact made that inference. Instead, the Court addresses whether the officers disregarded that risk. The objective fact that the officers summoned paramedics establishes that the officers subjectively did not disregard the risk to Burns.

exception, which applies where the state's "actions make the individual more vulnerable to private violence." *Salyers v. City of Portsmouth*, 534 F. App'x. 454, 458 (6th Cir. 2013) (citing *DeShaney*, 489 U.S. at 200-01; *Stemler*, 126 F.3d at 867-68; *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)); *Koulta v. Merciez*, 477 F.3d 442, 443 (6th Cir. 2007).

Assuming Burns was in custody from the time he was pulled over until the time he was dropped off at the restaurant, he was not in custody when he was hit by the car because he was free to act on his own behalf as evidenced by his choice to leave. *See Stemler*, 126 F.3d at 867-68. When an officer takes affirmative action to restrain the victim's freedom to act on his own behalf, the officer consequently imposes upon themselves a duty to ensure they are not placing the victim in danger. *Id.* The present case is distinguishable from *Stemler* because the officers, at most, restrained Burns's freedom to act on his own behalf until he arrived at the McDonald's restaurant. However, after the officers dropped off Burns he was free to act on his own behalf, as evidenced by the assertion that he was found two miles away. *Foy v. City of Berea*, 58 F.3d 227 (6th Cir. 1995) (there was no restraint on individuals' liberty when police officers told the victims to leave the premises, but they decided to take a lengthy drive after leaving.) Because Burns was not in custody at the time of the accident, only the state created danger theory is potentially applicable.

To present a plausible claim under the state created danger theory, a plaintiff must establish that: (1) there was an affirmative act by the state which either created or increased the risk that the victim would be exposed to an act of violence by a third party; (2) there was a special danger to the plaintiff wherein the state's actions places the plaintiff specifically at risk, as distinguished from the public at large; (3) the state knew or should have known that its actions specifically endangered the victim. *Cartwright v. City of Marine City*, 336 F.3d 487,

- 12 -

493 (6th Cir. 2003). It is imperative to note that "the question is not whether the victim was safer during the state action, but whether he was safer before the state action than he was after it." *Id*. (citing *DeShaney*, 489 U.S. at 201).

The plaintiff claims that, prior to the state action of being pulled over, Burns was driving without illuminated headlights, swerving into oncoming traffic, and slamming on his brakes. He was then pulled over and later dropped off at a restaurant. [Record No. 11 ¶¶ 9, 19, 20] Burns was not harmed at the restaurant; instead, he suffered harm approximately two miles away. The plaintiff has not made any assertion that being dropped off at the restaurant was more dangerous than being allowed to continue driving recklessly. [Record No. 11] Instead, she contends that the officers should have kept "Mr. Burns in custody while awaiting the arrival of his family, or [taken] him to the hospital." [Record No. 11 ¶ 20] But the standard for the state created danger theory is not whether Burns would have been safer in protective custody than at the McDonald's restaurant, it is whether he was safer at the restaurant than driving his car. *Cartwright*, 336 F.3d at 493 (citing *DeShaney*, 489 U.S. at 201).

Because the plaintiff failed to assert facts indicating that the McDonald's restaurant was more dangerous than driving recklessly, and because she conceded that the officers summoned an ambulance while Burns was in their custody, the Court cannot reasonably infer that the officers violated the Fourteenth Amendment.

### iii. Fifth and Eighth Amendments

The plaintiff alleges that the officers violated the Eighth Amendment, but "[t]he Eighth Amendment does not apply to pretrial detainees." *Weaver*, 340 F.3d at 410; *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). "[T]he Eighth Amendment applies only to those individuals who have been tried, convicted, and sentenced." *Richko v. Wayne Cty. Mich.*, 819

F.3d 907, 915 (6th Cir. 2016). Thus, the plaintiff has not (and cannot) assert sufficient facts to state a claim that the officers violated the Eighth Amendment.

Additionally, the officers did not violate Burns's Fifth Amendment rights because "the Fifth Amendment applies to the federal government, not state or local governments…" *Myers v. Vill. of Alger, Ohio*, 102 F. App'x. 931, 933 (6th Cir. 2004); *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000). When a plaintiff asserts a claim for violations of the Fifth and Fourteenth Amendments, the Fifth Amendment claim is a nullity and redundant of the Fourteenth Amendment claim when the activities involve states and their instrumentalities. *Scott*, 205 F.3d at 873 n. 8. Here, the plaintiff contends that the officers work for Georgetown and Scott County, making them state actors. Therefore, the plaintiff's Fifth Amendment claim is redundant of her Fourteenth Amendment claim and is not applicable to the officers.

In summary, because the plaintiff failed to establish the officers violated Burns's rights under the Fourth, Fifth, Eighth, or Fourteenth Amendments, the officers are entitled to qualified immunity. And if qualified immunity is ultimately not appropriate grounds for dismissal, dismissal is nonetheless appropriate because the plaintiff failed to assert sufficient factual matter to state a plausible claim that the officers violated Burns's constitutional rights pursuant to § 1983. Based on the foregoing analysis, it is unnecessary to address whether the officers violated a clearly established right.

### 2. Supervisory Liability

The plaintiff also asserts that Bosse and Hampton are personally liable as supervisors of the officers. As with the claims against the officers, the plaintiff must overcome the defense of qualified immunity. Qualified immunity protects a supervisor from personal liability except where the supervisor encouraged or otherwise directly participated in the specific act of

misconduct. *Davis v. Fentress Cty. Tenn.*, 6 F. App'x 243, 250-51 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reasoning behind this requirement is that §1983 liability must be based on active unconstitutional behavior and cannot be based on a mere failure to act. *Shehee*, 199 F.3d at 300.

The plaintiff provides no factual basis that Bosse or Hampton were present the night of the incident or that they encouraged the alleged misconduct. [Record No. 11] Even without the doctrine of qualified immunity and if the plainitff had asserted facts that Bosse and Hampton were present or otherwise directly participated in the officers conduct, the conduct was not unconstitutional. And because the conduct was not unconstitutional, the plaintiff does not have a plausible claim for a violation pursuant to § 1983 pursuant to *Ashcroft*, 556 U.S. 662.

### 3. Municipal Liability

The plaintiff contends that the officers' treatment of Burns was "the result of policies, customs and practices of the Supervisory Defendants[5], or were [sic] the result of an absence of policies, and/or effective training and supervision in the implementation of applicable policies, and such were the moving force behind Mr. Burns's [sic] death." [Record No. 11 ¶ 22] A plaintiff suing a municipality for a constitutional violation pursuant to § 1983 must prove the municipality's policy or custom caused the alleged injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

> One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision. To succeed on a failure to train or supervise claim [under § 1983], the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the

---

[5] The Supervisory Defendants include Georgetown and Scott County. [Record No. 11 p. 4]

result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Id*. However, before the Court can apply this test, "the plaintiff must first establish that the agents of the municipality have violated a constitutional right." *Cooper v. County of Washtenaw*, 222 F. App'x. 459, 473 (6th Cir. 2007); *see also Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

As previously explained, the plaintiff has not asserted facts sufficient to state a plausible claim that the officers in the present case violated Burns's constitutional rights. Thus, the Court need not apply the test from *Ellis*. Dismissal of the § 1983 claim against Georgetown and Scott County is appropriate.

### 4. State Law Claims

The Court has supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1367(a). However, a district court may decline to exercise jurisdiction over such claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because all claims associated with the alleged constitutional violations are dismissed, the Court declines to exercise jurisdiction over the state law claims.

### B. Motion for Leave to File a Second Amended Complaint

A plaintiff who has previously filed an amended complaint may later amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The defendants do not consent to a second amendment of the complaint. Therefore, the Court must determine whether leave is appropriate.

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). But, denying leave is appropriate in instances of "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. Further, the Sixth Circuit has held that "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp.*, 987 F.2d at 383.

The plaintiff asserts that she should be permitted to amend her complaint to remove the statement that the officers "nonetheless decided that Mr. Burns was not a danger to himself or to others" because the defendants misinterpret it. [Record No. 32] However, this amendment would not change the Court's rulings regarding the defendant's motions to dismiss. Regardless of the allegation sought to be omitted, the proposed second amended complaint does not state a legally plausible claim that the defendants are liable under § 1983. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The contested allegation was not considered in the Court's decision to dismiss the plaintiff's claims. Accordingly, "the court need not permit the amendment." *See Thiokol Corp.*, 987 F.2d at 383.

## V. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. The defendants' motions to dismiss [Record Nos. 23, 34] are **GRANTED**.

2. The plaintiff's motion for leave to file a second amended complaint [Record No. 32] is **DENIED**.

Dated: November 5, 2018.



Signed By:
*Danny C. Reeves*
United States District Judge